UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Pensacola Division

| | |
|---|---|
| **WINTEC ARROWMAKER, INC.,** | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) Civil Action No. _____ |
| **ADVANCED CONCEPTS ENTERPRISES, INC.,** | ) ) ) ) ) ) |
| *Defendant.* | ) |

## COMPLAINT

WinTec Arrowmaker, Inc. ("WinTec"), by counsel, as and for its Complaint against Advanced Concepts Enterprises, Inc. ("ACEs"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action by WinTec against ACEs for trade secret misappropriation and tortious interference with contract. Upon information and belief, ACE knowingly misused WinTec's trade secret and proprietary information in connection with a proposal to the United States Air Force Special Operations Command ("AFSOC").

## PARTIES

2. WinTec is a Maryland corporation, with its principal place of business in Fort Washington, Maryland.

3. ACEs is a Florida corporation with its principal place of business in Shalimar, Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between WinTec and ACEs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction over ACEs because it resides in Shalimar, Florida.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because ACEs resides in this judicial district.

## FACTS

7. WinTec is in the business of providing systems engineering and technical assistance for United States governmental organizations involved in deploying leading edge technologies for special mission organizations. WinTec has a long history of working with the AFSOC in connection with a number of AFSOC contracts.

8. WinTec has also worked with MacAulay Brown, Inc. ("MacB") in connection several AFSOC contracts. For example, WinTec worked as a subcontractor for MacB in connection with the AFSOC Systems Engineering and Technical Assistance ("SETA") II contract. MacB had won the SETA II contract through a competitive bidding process in 1999.

9. In 2004, AFSOC issued a Request for Proposal ("RFP") for the SETA III contract. WinTec bid on the SETA III contact as the prime contractor. In its bid, Wintec included MacB as a subcontractor.

10. WinTec won the SETA III in 2004 with MacB as its sole subcontractor.

11. In 2009, AFSOC issued an RFP for the SETA IV contract. As with the SETA III contract, WinTec submitted a bid to be the prime contractor and included MacB as a subcontractor in its bid. AFSOC awarded the SETA IV contract to WinTec in 2009.

12. Throughout the course of their relationship, MacB participated in multiple WinTec proposals to AFSOC. MacB also learned of WinTec's proprietary and trade secret pricing and technical strategies.

13. In 2009, AFSOC solicited a new Small Business Set Aside, Veteran Owned Service Disabled contract for Joint Terminal Attack Control ("JTAC") and Small Unmanned Aerial Systems ("SUAS") program support (the "JTAC/SUAS Contract").

14. WinTec entered into a Mutual NonDisclosure Agreement with Determinative Consulting Associates & Professional Services ("DPACS") (the "DPCAS NDA") so WinTec and DPACS could exchange proprietary and trade secret information in the context of exploring a mutually beneficial teaming relationship for the JTAC/SUAS Contract. A true copy of the DPACS NDA is attached as Exhibit 1.

15. WinTec later executed teaming agreements with MacB (the "MacB Teaming Agreement") and ("DCAPS") (the "DCAPS Teaming Agreement").

16. Both the MacB Teaming Agreement and the DCAPS Teaming Agreement contained provisions intended to safeguard the parties' proprietary and trade secret information and to restrict the use of such information for performing its obligations under the teaming agreement. For example, both teaming agreements prohibited the parties from making any reproductions, disclosures or use of proprietary information except under limited circumstances.

17. In reasonable reliance on the promises of MacB and DPACS in the teaming agreements, WinTec provided both MacB and DPACs with proprietary and trade secret information, including pricing information and WinTec's technical approach to the JTAC/SUAS Contract. This included sharing drafts of WinTec's proposal to AFSOC and discussions with MacB and DPACS about WinTec's proposal. Confidential copies of WinTec's proposal with proprietary

markings were given to both MacB and DCAPS.  The footer of each page of the proposal noted that use of the data was restricted: "Use or disclosure of data appearing on this sheet is subject to the restriction set forth on the title page of this qualification statement."  The restriction on the title page stated as follows:

> **This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used or disclosed - in whole or in part - for any purpose other than to evaluate this proposal.** If however, a contract is awarded as a result of - or in connection with - the submission of this data, the Government shall have the right to duplicate, use or disclose the data to the extent provided in the resulting contract. This restriction does not limit the Government's right to the information contained in this data if it is obtained from another source without restriction. The data subject to restrictions are contained in all sheets of this proposal.
>
> **The proprietary data contained herein, if disclosed to the public, would affect WinTec's competitive position in obtaining business**, therefore, it is considered to be exempt from public release under the Freedom of Information Act (5 USC 552, as amended) paragraph (b).

(emphasis added)

18. WinTec won the JTAC/SUAS Contract.  WinTec entered into subcontracting agreements with MacB (the "MacB Subcontract") and DCAPs (the "DCAPS Subcontract").  A true copy of the MacB Subcontract is attached as Exhibit 2.  A true copy of the DCAPs Subcontract is attached as Exhibit 3.

19. Both the MacB Subcontract and the DCAPS Subcontract contained terms and conditions to protect the parties' proprietary and trade secret information.  A party receiving proprietary information was required to handle proprietary information with the same degree of care it uses to handle its own proprietary information, and was to use its best efforts not to divulge, in whole or in part, proprietary information to any third party without the prior written consent of the disclosing party.

20. Beyond the proprietary markings, WinTec took reasonable efforts to maintain the secrecy of its proposal.  WinTec limited the proposal's distribution to its employees, who sign confidentiality agreements, and its two teammates.  It was WinTec's intention that no one was to see the proposal besides WinTec, DCAPS, MacB, and, eventually, the government.

21. WinTec spent approximately 45 days developing its proposal, utilizing 7-10 WinTec employees (plus employees from MacB and DCAPS), and spent over $100,000 assembling the proposal.

22. WinTec's proposal was commercially valuable.  It contained WinTec's approach to solving the government's requirements; that is, how to properly staff, supervise, and execute a contract for geographically disbursed personnel performing a mission for the Air Force that had never before been accomplished by a contractor workforce.

23. In 2009, WinTec was awarded JTAC/SUAS Contract.

24.  The JTAC/SUAS Contract was the first time the government had contracted for these types of services.  WinTec's proposal was the winning solution, and it would be commercially valuable to any future competitor who obtained it, as it would save that competitor from doing the developmental work themselves.

25. In 2011, AFSOC wanted to increase the size of the JTAC instructor force.  AFSOC indicated that it intended to re-compete the JTAC/SUAS Contract.

26. When AFSOC announced its intention to solicit a new 2012 JTAC/SUAS Contract, WinTec determined that it would not include MacB as a subcontractor in its bid.  In June 2012, WinTec advised MacB that WinTec would not team with MacB for the 2012 JTAC/SUAS Contract.

27. WinTec invited DCAPS to participate as a subcontractor in WinTec's proposal for the 2012 JTAC/SUAS Contract. DCAPS declined.

28. WinTec learned that MacB subsequently joined the ACEs 2012 JTAC/SUAS Contract bid team. Neither MacB nor DCAPS notified WinTec of their teaming relationship with ACEs.

29. AFSOC issued Solicitation No. FA0021-12-R-0014 for the 2012 JTAC/SUAS Contact on August 1, 2012. Responses were due by August 31, 2012.

30. In August 2012, WinTec prepared a proposal under ("Solicitation") issued by AFSOC.

31. WinTec was notified on September 17, 2012 by AFSOC that it was not selected for the JTAC/SUAS Contract. WinTec was advised that ACEs won the award.

32. Upon information and belief, the ACEs' proposal was similar, if not, identical to WinTec's proposal and may have even included the term "WinTec," although this has not been verified as WinTec has not seen a copy of ACEs' proposal.

33. Based on this information and belief, WinTec notified Mr. Jeff Lowman, a contracting officer for the government, of WinTec's intent to file an "Agency Level" protest, in part, protesting that the Government improperly included ACEs in the procurement when the Air Force was aware that ACEs used WinTec's proprietary and confidential proposal information in the ACEs proposal.

34. On September 20, 2012, WinTec delivered its protest to AFSOC.

35. AFSOC denied WinTec's protest on October 3, 2012. But, in so doing, AFSOC noted that there appeared to be similarities between the ACEs and WinTec proposals. AFSOC, however, was unable to determine whether any specific information was proprietary or confidential to any party.

36. Legal counsel for WinTec wrote to ACEs on October 5, 2012, the day after AFSOC denied WinTec's agency level protest.  Through this October 5, 2012 letter, WinTec advised ACEs of its concern that ACEs may have received a copy of the WinTec's 2009 JTAC/SUAS Contract proposal from either MacB or DCAPs and used WinTec's 2009 proposal in preparing ACEs response to the 2012 JTCA/SUAS Contract solicitation.  WinTec suggested that ACEs make its 2012 proposal available to WinTec on an outside counsel eyes only basis so that WinTec's legal representatives could determine whether WinTec's 2009 proposal had been misused.  To date, ACEs has totally ignored this reasonable request.

37. WinTec contacted Sydney Fuchs, CEO of MacB, on September 21 2012, to advise him of WinTec's concerns that WinTec's 2009 proposal had been given to ACEs and used as a basis for ACEs' 2012 proposal.  Mr. Fuchs disclaimed any knowledge of the JTAC/SUAS proposal and insisted WinTec contact Michael Tutin, MacB's Executive Vice President.

38. WinTec's Johnny Pantages spoke with Tutin on September 24, 2012.  Tutin denied having provided WinTec's 2009 proposal to ACEs.

39. On information and belief, based upon AFSOC's acknowledgement that there were similarities in the WinTec and ACEs proposals, and ACEs' total silence in response to a reasonable request to allow WinTec's outside counsel review ACEs' proposal on an outside counsel eyes only basis, ACEs received a copy of WinTec's proprietary and confidential proposal submitted in 2009 from either one or both of WinTec's current subcontractors for that work (MacB or DCAPS) for ACES' 2012 proposals.

40. Neither MacB nor DCAPS was authorized to disclose a copy of the proposal to any party, including ACEs.  The proprietary markings on the proposal clearly restricted disclosure of the document.

## COUNT I: Misappropriation of Trade Secrets
### (Pursuant to Fla. Stat. § 688.001 et seq.)

41. WinTec repeats paragraphs 1 through 40 above.

42. WinTec's 2009 proposal contained proprietary and trade secret information. It derived independent economic value from not being generally known, and WinTec took reasonable efforts to maintain its secrecy.

43. ACEs misappropriated WinTec's trade secrets because it knew or reasonably should have known that the information was trade secret to WinTec and that ACEs itself was not a lawful recipient of WinTec's information.

44. WinTec has been damaged by ACEs' misappropriation of WinTec's trade secrets in an amount to be proven at trial but in no event less than $100,000.

## COUNT II: Tortious Interference with Contract

45. WinTec repeats paragraphs 1 through 40 above.

46. WinTec entered into a valid and enforceable teaming agreement with DCAPS.

47. Upon information and belief, ACEs knew of WinTec's teaming agreement with DCAPS.

48. ACEs intentionally interfered with WinTec's teaming agreement when, upon information and belief, ACEs knowingly and improperly received from DCAPS proprietary information belonging to WinTec, in violation of DCAPS' agreement with WinTec.

## COUNT III: Tortious Interference with Contract

49. WinTec repeats paragraphs 1 through 40 above.

50. WinTec entered into a valid and enforceable teaming agreement with MacB.

51. Upon information and belief, ACEs knew of WinTec's teaming agreement with MacB.

52. ACEs intentionally interfered with WinTec's teaming agreement when, upon information and belief, ACEs knowingly and improperly received from MacB proprietary information belonging to WinTec, in violation of MacB's agreement with WinTec.

### COUNT IV: Tortious Interference with Contract

53. WinTec repeats paragraphs 1 through 40 above.

54. WinTec entered into a valid and enforceable subcontracting agreement with DCAPS.

55. Upon information and belief, ACEs knew of WinTec's subcontracting agreement with DCAPS.

56. ACEs intentionally interfered with WinTec's subcontracting agreement when, upon information and belief, ACEs knowingly and improperly received from DCAPS proprietary information belonging to WinTec, in violation of DCAPS' agreement with WinTec.

### COUNT V: Tortious Interference with Contract

57. WinTec repeats paragraphs 1 through 40 above.

58. WinTec entered into a valid and enforceable subcontracting agreement with MacB.

59. Upon information and belief, ACEs knew of WinTec's subcontracting agreement with MacB.

60. ACEs intentionally interfered with WinTec's subcontracting agreement when, upon information and belief, ACEs knowingly and improperly received from MacB proprietary information belonging to WinTec in violation of MacB's agreement with WinTec.

### Prayer for Relief

WHEREFORE, WinTec respectfully requests that this Court grant the following relief:

A. That judgment be entered against ACEs for misappropriation of trade secrets and tortious interference with contracts;

B.  That WinTec be awarded compensatory damages in an amount to be determined at trial but in no event less than $100,000;

C.  That WinTec be awarded punitive damages in an amount to be determined at trial;

D.  That ACEs be required to return all WinTec trade secret and proprietary information in ACEs' possession, custody, or control;

E.  That WinTec be awarded its attorneys' fees, costs and expenses incurred in prosecuting this lawsuit; and

F.  That Wintec be awarded such other relief as this Court deems just and reasonable.

## Jury Demand

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable as a matter of law.

DATED:  November 26, 2012

Respectfully submitted,

SQUIRE SANDERS (US) LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:   +1.561.650.7200
Facsimile:    +1.561.655.1509

By: */s/ Stephanie A. Griffin*
    Stephanie A. Griffin
    Florida Bar No.85019
    Stephaine.Griffin@squiresanders.com

4284495